OAO91 (Rev. 12/03) Criminal Complaint

## UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**FILED**

DEC 2 9 2008

RICHARD W WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
MARIO JUAREZ

CRIMINAL COMPLAINT

Case Number: **EMC**

3 08 70879

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about **December 27, 2008** (Date) in **San Mateo** County, in the **Northern** District of **California** defendant(s) did,

(Track Statutory Language of Offense)

See Attachments A and B, attached hereto and incorporated by reference;
see also Affidavit of Diana Alvarez, attached hereto and incorporated by reference

in violation of Title **21** United States Code, Section(s) **952**.

I further state that I am a(n) **Special Agent** and that this complaint is based on the following facts:
Official Title

See also Affidavit of Diana Alvarez, attached hereto and incorporated by reference;
see also Attachments A and B, attached hereto and incorporated by reference

Continued on the attached sheet and made a part of this complaint: ☒ Yes ☐ No

Approved as to Form: _____
AUSA

Signature of Complainant

**DIANA ALVAREZ**
Printed Name of Complainant

Sworn to before me and signed in my presence,

12/29/08
Date

at San Francisco, California
   City              State

Edward M. Chen
Name of Judge

U.S. Magistrate
Title of Judge

Signature of Judge

**UNITED STATES DISTRICT COURT**     }

                                                                }    ss.   **AFFIDAVIT**

**NORTHERN DISTRICT OF CALIFORNIA**   }

I, Diana Alvarez, Special Agent, U.S. Immigration and Customs Enforcement (ICE), first being duly sworn, do depose and state:

## I.   AGENT BACKGROUND AND PURPOSE OF AFFIDAVIT

1.  I am a Special Agent (SA) with U.S. Immigration and Customs Enforcement (ICE), assigned to the office of the Resident Agent in Charge, San Francisco International Airport, (RAC/SI) and have been employed by ICE since December of 2006. Prior to my employment with ICE, I was employed as a Data Analyst for a government contractor assigned to ICE for five years. I hold a Bachelor's degree in Criminal Justice from John Jay College of Criminal Justice in New York, New York. I have completed ICE Special Agent Training and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia.

      a.   I am responsible for enforcing federal criminal statutes, particularly those related to immigration and customs. I have received training and actual experience relating to Federal Criminal Procedures, Federal Statutes and U.S. Immigration and Customs Regulations. This includes training in investigative techniques and violations of Title 18, United States Code and Title 8; I did have some limited training and exposure to violations of Title 21. In addition to my own experience, I have, in the course of the investigation described herein, I have consulted with other federal agents, including ICE agents at the San Francisco Airport who have written affidavits for or participated in the application for and execution of hundreds of search warrants over the course of their careers. Moreover, I understand that my superior, Senior Special Agent Ken Okazaki, has participated in multiple investigations involving narcotics at border control points, such as marine ports and airports, during his twenty-five years as a special agent.

      b.   As a Special Agent of ICE, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States.

2. This affidavit is made in support of a complaint against Mario JUAREZ, date of birth September 13, 1980, for knowingly or intentionally possessing with intent to manufacture, distribute, or dispense, a controlled substance, in violation of Title 21, U.S.C., Sections 952 and 960.

3. The facts set forth in this affidavit are known to me as a result of my participation in this investigation, from reports made to me by other law enforcement officers, and from records, documents, and other evidence obtained during this investigation. Since this affidavit is being submitted for the limited purpose of outlining the offensive conduct of Mario JUAREZ, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts I believe are necessary to establish probable cause that a violation of federal law has occurred.

## II. FACTS ESTABLISHING PROBABLE CAUSE

4. On December 27, 2008, at approximately 0030 hours Mario JUAREZ, date of birth September 13, 1980, arrived at San Francisco International Airport (SFO) from El Salvador aboard Taca Airlines flight number 560. JUAREZ was referred for a secondary customs examination based upon a one-day "lookout" created by the Passenger Analysis Unit of U.S. Customs and Border Protection (CBP). The "lookout" was created as a result of prior intelligence obtained from a record of a Heroin seizure in Charlotte, North Carolina from a subject linked to JUAREZ. The record stated that JUAREZ was a "co-traveler of Alvarez, Adrian who attempted to smuggle 9.335 kilograms of Heroin concealed inside a tow bar."

5. Following his arrival at SFO, JUAREZ presented his passport, boarding pass and airline tickets to U.S. Customs and Border Protection (CBP) Officer David Robins and said he was visiting the U.S. to buy a car with a guy he was to meet and assist in taking the vehicle to Mexico. CBPO Robins asked JUAREZ if he owned the bags he was carrying. JUAREZ claimed ownership of all of his luggage and all contents therein. A baggage tag on the duffel bag where the tow bars were discovered depicted "Mario Juarez."

6. CBPO Robins then asked JUAREZ what was in the duffel bag. JUAREZ replied that he had tow bars. (By way of background, "tow bars" are metal bars of the type used to hitch or connect one vehicle to another. A demonstrative of the type of bars found in Mr. JUAREZ's bag is attached hereto.) During the inspection of JUAREZ's baggage, CBPO

2

Robins did in fact locate 2 tow bars (which were in turn dis-assembled into 4 separate component parts into the inspection that followed) with hitches attached.

5. CBPOs Robins and Jyoti Rose placed the tow bars into the x-ray machine. Based on the experience of the CBPOs with x-rays of tow bars, anomalies in the x-ray were observed. CBPO Robins removed the tow bars from the x-ray machine and was able to observ fresh paint and grease on the nuts and bolts of the tow bar. With the approval of Chief CBPO Leary, CBPO Robins disassembled the tow bolts from each other and from the hitches. CBPO Robins later drilled a hole into each one of the tow bars and inserted a probing instrument. Upon removal of the probing instrument, a white residue was discovered and field tested positive for cocaine. SA Ken Okazaki and I were then contacted by CBP to assist in the investigation.

6. SA Okazaki and I thereafter viewed the tow bars and the contents inside. At approximately 0712 hours on that same day, JUAREZ read to himself his Miranda rights from a standard ICE Miranda form (Spanish version).

7. After JUAREZ read the form, I asked him if he understood his rights. JUAREZ said yes. I asked him if he was willing to waive his rights and answer questions. He said he was. JUAREZ was then asked to initial each line listed on the form and sign on the bottom.

8. After JUAREZ signed the form I contacted the Language Line Services that Immigration and Customs Enforcement utilize. The Language Line provided Interpreter number 503. Once connected to the interpreter, I then proceeded to ask JUAREZ if he knew the tow bars contained cocaine. JUAREZ said he knew there was something, but did not know if it was currency or drugs. I asked JUAREZ if he had ever transported contraband into the U.S. prior to this date. JUAREZ said yes, this was his fifth time. JUAREZ's travel was corroborated by reviewing his passports. I asked JUAREZ to detail the events of the other dates. JUAREZ said the first time was only a test, so the tow bars were empty. However, the second and third times the tow bars contained currency. The fourth time the tow bars contained a controlled substance unknown to him.

9. Since that time, I have received confirmation from the CBP laboratory that one of the four bars has been tested; that test confirmed the presence of cocaine inside the tested bar. The CBPO Robins advised me further that each component bar weighed approximately 4.8 kg and that total weight of the 4 component tow bar pieces is approximately 19.66 kg. The CBP laboratory is currently in the process of disassembling the 4 component tow bar pieces to determine the purity of cocaine that the Government has probable cause to believe is stored inside each of the 4 tow bar pieces.

### III. CONCLUSION

10. Based on the above facts and information, I submit there is probable cause to believe that on or about December 27, 2008, in the Northern District of California, Mario JUAREZ did knowingly and intentionally attempt to import into the United States a controlled substance, to wit a kilograms of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, or salts or isomers, in violation of Title 21, U.S.C., Sections 952 and 960.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Diana Alvarez, Special Agent
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Sworn to before me, and subscribed in my presence,
This ____ day of December, 2008.

HON. EDWARD M. CHEN
United States Magistrate Judge

4



"Tow Bars" similar to type found in Mr. Juarez's duffel bag

## ATTACHMENT A

**STATUTORY LANGUAGE**

**Title 21, United States Code, Section 952 (in relevant part):**

It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter . . .

## ATTACHMENT B

## PENALTIES

**A person convicted of violating Title 21, United States Code, Section 952, pursuant to 21 U.S.C. 960,** shall be fined not more than $4,000,000 and/or imprisoned not less than ten (10) years and not more than life, given a term of supervised release of not less than five (5) years and up to a lifetime of supervised release, and required to pay a special assessment fee of one hundred ($100) dollars.